## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**PAMELA ARVIN BLOCKER,**

      **Plaintiff,**

                                   **Civil Action 2:17-cv-513**
                                   **Chief Judge Edmund A. Sargus, Jr.**
**v.**                                   **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Pamela Arvin Blocker ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.  BACKGROUND

Plaintiff protectively filed her application for a Period of Disability and Disability Insurance Benefits on January 1, 2014. In her application, Plaintiff alleged a disability onset of January 1, 2012. Plaintiff's application was denied initially on April 1, 2014, and upon reconsideration on September 4, 2014. Plaintiff sought a hearing before an administrative law

judge. Administrative Law Judge Timothy Gates (the "ALJ") held a hearing on June 7, 2016, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert Carl W. Hartun (the "VE") also appeared and testified at the hearing. On August 17, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On April 10, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ erred in his consideration and weighing of the medical opinions in the record. According to Plaintiff, the ALJ failed to properly consider Dr. Michael Sayegh's opinions under the treating physician rule and improperly weighed the opinions of both the state agency reviewing physicians and Dr. Mark Weaver. Second, Plaintiff asserts that the ALJ erred in his credibility assessment with regard to Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms. Specifically, Plaintiff argues that the ALJ's reliance on Plaintiff's activities of daily living was misplaced and that the ALJ failed to properly consider Plaintiff's use of a medical assistive device for ambulation.

## II. HEARING TESTIMONY

At the administrative hearing, Plaintiff presented with an oxygen tank, representing that she has been placed on 2 liters, 24 hours a day. (PAGEID # 97.) Plaintiff testified that she last worked as a policy writer/insurance specialist for the Social Security Administration in 2011 and that she is unable to work due to concentration problems and pain in her lower back and arms. (PAGEID # 97, 100.) Plaintiff estimated she can only sit for 15 minutes at a time, stand for 5

minutes, and walk 10 minutes, and that lifting more than 5 pounds causes cramps in her back and "shooting pains" down her leg. (PAGEID # 103.) She also described experiencing headaches most days of the week, typically lasting 5-6 hours and worsening essential tremors in her right hand. (PAGEID # 111-12.) Plaintiff also testified that she went on a vacation to Oregon then Hawaii, but stated that she spent that time watching movies in bed and was not able to go down to the beach. (*Id.*) Finally, Plaintiff stated that she uses a walker whenever she must do any significant walking and uses an electric cart at the grocery store. (*Id.*)

## III. RELEVANT RECORD EVIDENCE

### A. Ismet Ozkazanc, M.D.

Plaintiff first saw Dr. Ismet Ozkazanc, M.D., on January 31, 2013. On examination, Dr. Ozkazanc found several symmetric fibromyalgia tender points. (PAGEID # 383.) He diagnosed Plaintiff with depression, hypertension, COPD, osteopenia, chronic low back pain (lumbar spine stenosis), fibromyalgia, GERD, history of microscopic colitis, benign essential tremor, and migraine headache. (PAGEID # 385.)

On February 11, 2013, Plaintiff underwent a DEXA bone scan of the hips, pelvis, and spine, which revealed osteopenia of the lumbar spine and femoral necks of the hips. (PAGEID # 406.) Based on these results, Dr. Ozkazanc diagnosed chronic low back pain (lumbar spine stenosis) status post epidurals and osteopenia. (PAGEID # 378.) Treatment notes reflect that Plaintiff continued to treat with Dr. Ozkazanc for hypertension and sinusitis, shortness of breath, and fibromyalgia through May 2015. (PAGEID # 355-72, 586-89, 735- 72.)

### B. Michael Sayegh, M.D.

On April 16, 2013, Plaintiff began treating with pain management specialist Michael

Sayegh, M.D.  On examination, Dr. Sayegh found Plaintiff exhibited trigger points and tenderness in the bilateral lumbar paraspinal muscles and had mildly decreased sensation in the lateral aspect of her left lower leg.  (PAGEID # 430.)  Dr. Sayegh diagnosed lumbago, sprain/strain, fracture of S4, herniated nucleus pulposus, moderate foraminal stenosis, lumbar facet syndrome, fibromyalgia, right carpal tunnel syndrome, left carpal tunnel syndrome status-post surgery and ulnar release of the left arm, tobacco abuse, anxiety, depression, and sleep disturbance.  (*Id.*)

Dr. Sayegh ordered an MRI, taken on April 23, 2013, which revealed mild disc degeneration at L3-4 and L5-S1, facet osteoarthropathy at L4-5, and disc bulging, central protrusion, and facet disease with mild central canal narrowing at L5-S1.  (*Id.* at 432.)  A subsequent MRI of Plaintiff's lumbar spine, taken on January 18, 2015, showed degeneration and disc bulging, a focal right paramedian protrusion with impingement of the right proximal traversing nerve root, and mild right neural foraminal narrowing at L4-5, and focal central and left paramedian disc protrusion with impingement of the left proximal traversing nerve root, mild central canal narrowing, and mild right neural foramen stenosis at L5-S1.  (*Id.* at 719.)

On December 17, 2013, Plaintiff reported ongoing pain in Plaintiff's lower back and legs.  (PAGEID # 416.)  Plaintiff exhibited bilateral lumbar paraspinal tenderness and trigger points, decreased sensation and tendon reflexes in her right and left leg, and a positive straight leg raise test bilaterally.  (*Id.*)  Results of subsequent physical examinations have been substantially similar.  (*See, e.g.*, PAGEID # 554, 556.)

On April 20, 2014, and July 3, 2014, Dr. Sayegh completed his first sets of medical source opinions on behalf of the Social Security Administration.  (PAGEID # 411-13, 551-53.)

Dr. Sayegh opined that Plaintiff had a limited ability to sit, stand, and walk, and could not bend, stoop, or lift. He also indicated that he believed Plaintiff's concentration and ability to think clearly might be affected by her pain and medications. (*Id.* at 413, 553.)

On November 7, 2014, and April 25, 2016, Dr. Sayegh completed Disability Impairment Questionnaires. (PAGEID # 703-07, 919-23.) Dr. Sayegh opined that in an 8-hour workday, Plaintiff could sit 2 hours total, stand/walk 2 hours total, and must get up every 30 minutes when sitting to move around for 15 minutes and could occasionally lift/carry 5 pounds. (*Id.* at 705, 921.) In the November 2014 Questionnaire, Dr. Sayegh opined that Plaintiff could "never/rarely" use her left upper extremity to grasp, turn, and twist objects, or use her left hand/fingers for fine manipulations. (*Id.* at 706.) In the April 2016 Questionnaire, Dr. Sayegh opined that Plaintiff could "occasionally" use her left upper extremity to grasp, turn and turn objects, or use her left hand/fingers for fine manipulations, and could occasionally use the right upper extremity to grasp, turn, and twist objects and use the right hand/fingers for fine manipulations. (*Id.* at 922.) Moreover, she would need to take unscheduled breaks to rest hourly during an 8-hour workday, each break lasting an average of 15-30 minutes before returning to work. (*Id.*) In the November 2014 Questionnaire, Dr. Sayegh opined that Plaintiff was likely to be absent from work more than three times a month, but in April 2016, he concluded Plaintiff would likely be absent only two to three times a month. (*Id.* at 707, 923.) Ultimately, Dr. Sayegh concluded that Plaintiff cannot perform full time competitive work. (*Id.* at 707.)

On November 12, 2014, Dr. Sayegh prepared a narrative, in which he opined that Plaintiff could not perform sustained employment based on her physical examinations, imaging studies, and medical diagnosis. (PAGEID # 708.) According to Dr. Sayegh, Plaintiff could not

stand, sit, or walk for longer than 1 hour without interruptions; could not lift more than 5 pounds; and could not push, pull, bend, stoop, climb, or crawl. (*Id.*)

C. **Mark E. Weaver, M.D.**

In August 2014, Plaintiff was consultatively examined by Dr. Mark E. Weaver, M.D. (PAGEID # 558-67.) On examination, Plaintiff exhibited stiffened ambulation with a symmetric gait; slight shortness of breath after walking 40 feet up and down the hallway and performing physical activities; poor finger-to-nose apposition due to bilateral hand tremor; diffuse decreased breath sounds in all lung fields bilaterally; multiple tender trigger points in most major muscle groups of the upper and lower extremities; squatting to only 20 percent of full with leg pain; give-way and jerky decreased dexterity due to hand tremor with grip strength testing; abnormal bilateral grasp, manipulation, pinch, and fine coordination characterized as slow, hesitant, and jerky with give way and decreased dexterity with intention tremor in both hands; constant, moderate, involuntary spasm to inspection and palpation of the lumbar musculature; multiple tender trigger points palpated in trapezius and lumbar muscular in addition to those found in extremities; more than 11 out of 18 probable fibromyalgia trigger points; restricted range of motion in the dorso lumbar spine; and diffuse decreased sensation over all fingers of both hands and all toes of both feet. (PAGEID # 559-61.) Dr. Weaver also opined that Plaintiff could only sit or stand in one position for 10 minutes. (PAGEID # 559.) Dr. Weaver diagnosed probable chronic lower back pain, possible lumbago sprain/strain, fracture of S4, sciatica, herniated nucleus pulposus with myelopathy, degenerative disc disease, mild spinal stenosis, and lumbar facet syndrome by history, probable fibromyalgia, probable chronic shortness of breath and COPD, probable bilateral tremor of the hands, and probable bilateral peripheral neuropathy of

the hands and feet.  (PAGEID # 562.)  Dr. Weaver concluded that Plaintiff was limited in her ability to perform sustained sitting, standing, walking, climbing, lifting, carrying, and handling objects.  (*Id.*)

**D.**     **State Agency Evaluations**

On April 1, 2014, Kourosh Golestany, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity.  Dr. Golestany opined that Plaintiff was capable of light work with additional limitations of never climb ladders/ropes/scaffolds, avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and avoid all exposure to hazards (machinery, heights, etc.).  (PAGEID # 124-26.)  Dr. Golestany also noted that, although Plaintiff alleges using walker, wheelchair, and cane, the available medical records do not show using any assistive device.  (PAGEID # 126.)  Moreover, Dr. Golestany noted that, although Dr. Sayegh diagnosed Plaintiff with right carpal tunnel syndrome and left carpal tunnel syndrome, status-post surgery and ulnar neuropathy release in her left arm, available records do not show any significant physical limitations related to carpal tunnel syndrome.  (PAGEID # 126.)  On September 4, 2014, Anne Prosperi, D.O., reviewed the record upon reconsideration and affirmed Dr. Golestany's assessment.  (PAGEID # 140.)

### IV.  THE ADMINISTRATIVE DECISION

On August 17, 2016, the ALJ issued his decision.  (PAGEID # 69-84.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since January 1, 2012, the alleged onset date.  (*Id.*)  The ALJ found that Plaintiff has the severe impairments of chronic obstructive pulmonary disease (COPD), degenerative disc disease of the lumbar spine, fibromyalgia, hypertension, obesity, essential tremors, and status-post left carpal tunnel release and ulnar nerve transposition.  (*Id.*)  He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (PAGEID # 74.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could reach overhead occasionally bilaterally.  She could frequently handle and finger on the left (unlimited on the right).  She could occasionally climb ramps and stairs.  She could never climb ladders, ropes, and scaffolds.  She could frequently balance and

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

stoop. She could occasionally kneel, crouch, and crawl. She should avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants.

(PAGEID # 76.) In reaching this determination, the ALJ followed a two-step process. First, the ALJ found that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (PAGEID # 77.) Second, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

In calculating Plaintiff's RFC, the ALJ considered the opinions of Drs. Sayegh and Weaver, as well as the opinions from the state agency physicians, Drs. Golestany and Prosperi. The ALJ assigned little weight to the opinions from treating pain management specialist, Dr. Sayegh, finding his "opinions are not well supported by medically acceptable clinical or laboratory diagnostic evidence nor are these opinions consistent with other substantial evidence in the record." (PAGEID # 82.) The ALJ assigned the "greatest weight" to the state agency reviewing physicians, concluding that their opinions were "generally consistent with the evidence." (*Id.*) The ALJ assigned some weight to the consultative examining evaluation performed by Dr. Weaver, to the extent that it supported the RFC the ALJ assessed.

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past relevant work as an examiner and administrative analyst. (PAGEID # 83.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (PAGEID # 83-84.)

# V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

# VI. ANALYSIS

In her Statement of Errors, Plaintiff first contends that the ALJ improperly weighed the medical source opinions in the record. Within her first contention of error, Plaintiff argues that (1) the ALJ failed to properly apply the treating physician rule, (2) the ALJ improperly gave the greatest weight to the opinions of the state agency physicians, and (3) the ALJ should have given more weight to Dr. Weaver's opinion. Second, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's testimony regarding her symptoms under SSR 16-3p. The undersigned considers each of these contentions of error in turn.

## A.  Weight Assigned to the Medical Source Opinions

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). The Court next turns to Plaintiff's contention that the ALJ violated the treating physician rule.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1. Dr. Sayegh's Opinions

As discussed above, the ALJ assigned little weight to Dr. Sayegh's opinions as Plaintiff's treating physician and assigned the greatest weight to the opinions of the state agency reviewing physicians. Plaintiff maintains that "contrary to the conclusion of the ALJ, the opinions from [Dr. Sayegh] are ground in appropriate medical findings documented throughout the longitudinal treatment records," and are not inconsistent with the record as a whole. (Statement of Errors 16, ECF No 7.) Plaintiff also argues that the ALJ's reliance on the non-examining sources was misplaced because the file review occurred more than two years prior to the ALJ's decision and before Dr. Sayegh rendered his opinions. (PAGEID # 1067.) Plaintiff further asserts that the

ALJ failed to consider the factors in SSR 96-2p in his consideration.  In discussing Dr. Sayegh's opinions, the ALJ stated as follows:

> [Dr. Sayegh's] opinion are not well supported by medically acceptable clinical or laboratory diagnostic evidence nor are the[] opinions consistent with other substantial evidence in the record.  Dr. Sayegh's opinions are based heavily on the claimant's subjective complaints rather than the objective, clinical findings.  For example, the assessments offer no specific, clinical findings in support of the extreme limitations, citing only physical exam findings.  However, as analyzed above, those exams do not support inability to sit, stand, walk, or use her hands.  Dr. Sayegh noted right hand/arm limitations yet there are few reference to right hand pain or issues.  The claimant had some decreased sensation at the fingers and problems with grasp during Dr. Weaver's exam; however, this was not entirely reliable given the inconsistent muscle testing.  No other sources noted similar problems, including Dr. Sayegh.  This appears to be based on subjective complaints with no corroborating evidence, such as positive Tinel's or Phalen's signs at the wrist, or similar findings.  The limitations are also speculative without any evidentiary support.  For example, the claimant would miss work excessively and require regular scheduled breaks.  The opinions also rely on factors for which Dr. Sayegh does not treat the claimant such as depression and anxiety.  The assessments are also not internally consistent, as one assessment notes that the claimant is stable with current medications.  Further, the claimant's own reported activities require greater abilities than the assessment would suggest.  The claimant is able to travel, socialize, drive, shop, and manage personal care.  It is also notable that the opinions do not include an ambulatory device, such as a cane or walker, as medically necessary.

(PAGEID # 82.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Sayegh's opinions.  The ALJ articulated the weight he afforded Dr. Sayegh's opinions, and properly declined to afford the opinions controlling weight on the grounds they were not supported by objective medical evidence, and were inconsistent with the record as a whole.  *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as a relevant consideration); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply

14

because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'"). Moreover, the ALJ is not required under SSR 96-2p to expressly consider each of the factors in 20 C.F.R. § 404.1527 in his written decision. *See Tilley*, 394 F. App'x at 222. Rather, the ALJ need only consider the §404.1527 factors, and give "good reason" for the weight assigned in his decision. Thus, the ALJ did not err in failing to expressly discuss the § 404.1527 factors, and, as discussed below, the undersigned concludes that the ALJ gave good reason for the weights assigned to the medical sources.

First, the ALJ concluded that Dr. Sayegh's opinions are primarily based on Plaintiff's subjective complaints, not on objective medical evidence. Although Plaintiff maintains that the opinions are properly grounded in appropriate medical findings, the opinions themselves do not indicate such support. For example, Dr. Sayegh stated that his opinions were based on MRI findings and "physical exam" findings. Although physical exam findings indicate Plaintiff may be functionally limited, there are no results suggesting extreme limitations. For example, physical examinations performed by Dr. Ozkazanc reflect only mild to normal findings. (*See, e.g.*, PAGEID # 751, 803, 840) (finding normal range of motion, tenderness, and no edema).) Physical examinations performed by Dr. Sayegh only reflect tenderness and trigger points, mild decreased sensation and tendon reflexes, and a positive straight leg raise test bilaterally. Further, the results of Plaintiff's MRI studies do not support the extreme limitations Dr. Sayegh opined, as the results largely indicate only mild abnormalities. (*See, e.g.*, PAGEID # 325 (indicating both mild and unremarkable results).) That Dr. Sayegh's opinions are not supported by objective medical evidence constitutes good reason for the ALJ to discredit them.

Next, the ALJ concluded that Dr. Sayegh's opinions were inconsistent with Plaintiff's activities of daily living. As the ALJ noted, Plaintiff reported in both her 2014 Function Report and in her hearing testimony that she is able to travel, socialize, drive, shop, and manage her personal care. (*See* PAGEID # 278-86.) Plaintiff maintains that the ALJ's consideration of her activities of daily living is in error, relying on *Rogers v. Comm'r of Soc. Sec*, 486 F.3d 234, 248-49 (6th Cir. 2007). Plaintiff's reliance on *Rogers* is misplaced. In *Rogers*, the Sixth Circuit reasoned that "somewhat minimal daily functions," such as driving, cleaning an apartment, caring for two dogs, doing laundry, reading, stretching, and watching the news, "are not comparable to typical work activities." *Id.* at 248. The *Rogers* Court also recognized that the ALJ had mischaracterized the plaintiff's activities, which were significantly more limited than the ALJ represented. *Id.* at 248-49. Here, however, Plaintiff's reported activities extend beyond "normal daily functions" when viewed in the aggregate. For example, as discussed *infra*, Plaintiff reported travels which directly undermine Dr. Sayegh's opinion that she cannot sit for extended periods of time without breaks. Although the undersigned recognizes that normal daily activities may not always be sufficient to undermine a the credibility of a medical source, in this case, Plaintiff's activities conflict with Dr. Sayegh's extreme limitations and thus constitute good reason for the ALJ's consideration and weighing of Dr. Sayegh's opinions.

Finally, Plaintiff asserts that the ALJ "cited no medical authority in the record who stated that the above findings could not cause disabling physical limitations described by the treating board-certified specialist," and that the ALJ "certainly could not rely on his own lay interpretation of the medical data in the face of contradictory expert opinions from a doctor who considered the exact same evidence." (*Id.* at 1065.) However, this is not a situation where the

ALJ dismissed a medical expert's opinion, replacing it with his own.  Rather, in this case, the

ALJ assigned little weight to Dr. Sayegh's opinions, instead relying on both the objective

evidence in the record and the opinions of the state agency reviewing physicians to calculate

Plaintiff's RFC.  Thus, the ALJ relied not on his own opinions, but on the record evidence and

the opinions of reviewing physicians.

### 2.    Other Medical Source Opinions

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must

apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the source.  In addition, the regulations provide that where, as here, the

ALJ does not assign controlling weight to the claimant's treating physician, he or she must

explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative
> law judge must explain in the decision the weight given to the opinions of a State
> agency medical or psychological consultant or other program physician,
> psychologist, or other medical specialist, as the administrative law judge must do
> for any opinions from treating sources, nontreating sources, and other
> nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii).

Plaintiff asserts that the ALJ erred in assigning the greatest weight to the opinions of the

state agency reviewing physicians.  Plaintiff points out that the state agency physicians rendered

their opinions on an incomplete medical record, and significantly, without the benefit of Dr.

Sayegh's opinions.  In support of her position that the ALJ improperly relied upon the state

agency physicians' opinions, Plaintiff relies on *Blakely v. Comm'r of Soc. Sec*, 581 F.3d 399 (6th

Cir. 2009).  However, in *Blakely*, the Sixth Circuit noted that a non-examining source may be entitled to greater weight than a treating source, even where the non-examining source was not able to review the complete record, if the ALJ gives some indication he reviewed and considered the evidence not then available to the non-examining source.  *Id.* (citing *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007).  *See also Parrish v. Berryhill*, No 1:16-cv-1880, 2017 WL 2728394, at *8 (N.D. Ohio June 8, 2017) (collecting cases holding that an ALJ may rely on state agency evaluation that did not have access to the complete record, if the ALJ considers the complete record).  In this case, the ALJ considered Dr. Sayegh's opinions and the complete treatment records.  (*See* PAGEID # 77-78.)  Accordingly, *Blakely* does not control, and the undersigned concludes that the ALJ did not err in assigning the greatest weight to the state agency reviewing physicians.

Plaintiff also maintains that the ALJ improperly considered and weighed the opinion of the Administration's evaluating physician, Dr. Weaver.  Plaintiff posits that Dr. Weaver's opinion is consistent with Dr. Sayegh's findings and that "[c]ertainly his findings were entitled to more weight than those offered by the non-examining, non-specialists who reviewed a deficient medical record."  (Statement of Errors 21, ECF No. 7.)  As noted above, the ALJ accorded Dr. Weaver's opinion some weight, but declined to adopt his assessment, explaining that "it appears Dr. Weaver relied heavily on the claimant's subjective complaints, particularly as it relates to the use of her hands and abilities to sit, stand, and walk."  (PAGEID # 81.)  Consistent with the ALJ's assertions, the record does not contain evidence demonstrating that Plaintiff can only sit or stand for 10 minutes at a time, and moreover, Plaintiff's extensive travels belie such extreme limitations.  (*Cf.* PAGEID # 102-103 (providing testimony that Plaintiff can stand for 15 minutes

at a time).)  The ALJ also expressly considered the examining relationship, supportability of the opinion, and the consistency of the opinion with the record as a whole in his decision.  (*See* PAGEID # 80-81.)  *See also* 20 C.F.R. § 416.927(c).  The undersigned is persuaded that the ALJ appropriately weighed Dr. Weaver's opinion and that he gave good reason for the weight assigned.  Thus, the ALJ did not commit reversible error in assigning Dr. Weaver's opinion less weight than the opinions of the reviewing physicians.

In summary, the undersigned finds that the ALJ properly considered and weighed the medical source opinions in the record.  Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ's Evaluation of Plaintiff's Testimony and Credibility**

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p.  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements.  In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness.  *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.").  Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to

substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at

*10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference

between a credibility determination, which necessarily impacts the entirety of a claimant's

subjective testimony, and a consistency determination, which applies only to specific statements

regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for

reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the

procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law

controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's

clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's

credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the
> disability claim, a two-part analysis is used in evaluating complaints of disabling
> pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001);
> *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask
> whether the there is an underlying medically determinable physical impairment
> that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R.
> § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he
> must evaluate the intensity, persistence, and limiting effects of the symptoms on
> the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of

pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir.

2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by

substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility

must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ: improperly relied on the absence of medical evidence from the alleged onset date until [2013]; "placed undue weight on [Plaintiff's] activities of daily living, including her ability to go on two vacations;" improperly determined that Plaintiff did not require an assistive device to ambulate; improperly relied on Plaintiff's improvement with treatment; and improperly considered Plaintiff's continued smoking and unprescribed oxygen use with respect to her COPD diagnosis.

In this case, the undersigned concludes that the ALJ properly evaluated Plaintiff's statements under SSR 16-3p. As discussed by the ALJ, Plaintiff's activities of daily living

demonstrate that the statements regarding her symptoms and limitations are inconsistent with the record evidence. Initially, the undersigned notes that Plaintiff's reported activities of daily living, such as shopping, driving, and caring for herself, do not necessarily indicate that she is unable to perform work activities. *See Rogers*, 486 F.3d at 249. However, when examined against Plaintiff's statements regarding her symptoms and limitations, Plaintiff's activities of daily living are incongruous. Significantly, Plaintiff alleges that she is unable to sit for long periods of time. Plaintiff's extensive travels, however, demonstrate otherwise. With respect to Plaintiff's travels, as the ALJ noted, vacations and disability are not mutually exclusive. (*See* PAGEID # 80.) In this case, however, the ALJ reasonably observed that Plaintiff's travels are substantially inconsistent with her alleged limitations. For example, Plaintiff went on a seven-day cruise, traveled to attend bike week and camp, and also traveled by car to Portland, Oregon—reportedly a four-day car trip—and then took a five-hour flight to Hawaii. (PAGEID # 105-06.) Although Plaintiff represents that during the car trip she stopped every hour or two to change positions, the time spent sitting between stops equates to at least four times her alleged limitations. Further, Plaintiff did not indicate how often she changed positions during the five-hour flight, only that she sat in the aisle so she could "get up and move around." (PAGEID # 107.) The travel time alone belies Plaintiff's contention that her vacations are not properly considered as she "spent [the vacation] watching movies in bed and was not able to go to the beach." (Statement of Errors 18, ECF No. 7.) The undersigned also notes that this travel is repetitive, as Plaintiff owns a time share in Hawaii and travels there every two-to-three years. (PAGEID # 106.) Accordingly, the undersigned concludes that the ALJ properly considered the consistency of Plaintiff's statthree

ements concerning the limiting effects of her symptoms.

With respect to Plaintiff's alleged use of a walker, the undersigned notes that if a medical device is "not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduce[s] her ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The ALJ concluded that the record did not demonstrate that Plaintiff's use of a cane or walker was medically necessary. Plaintiff contends that her use of an assistive device was medically necessary, citing to portions of the record which reflect "neurological abnormalities with decreased sensation in both legs." (Pl.'s Statement of Errors 24, ECF No. 7.) Such findings on objective exam may indicate that an assistive device is medically necessary; however, as noted above, SSR 96-9p also requires that there be medical documentation "*describing the circumstances for which it is needed*." SSR 96-9p (emphasis added). Because the record does not contain any medical documentation describing the circumstances for which Plaintiff would need a cane or walker, the undersigned concludes that the ALJ did not err in concluding that Plaintiff's use of an assistive device was not necessary. It follows, therefore, that the ALJ could properly consider Plaintiff's alleged necessity of an assistive device to be inconsistent with the record evidence.

With respect to her use of oxygen and her continued smoking, Plaintiff concedes that her disability is "due to a combination of impairments, but primarily her chronic pain. Thus, focus on her pulmonary issues is not central to a determination of whether Plaintiff's statements

regarding her pain and resulting limitations are supported by the record." (Pl.'s Statement of Errors 26, ECF No. 7.) Because Plaintiff does not challenge the ALJ's RFC determination with respect to functional limitations resulting from her COPD, the undersigned finds that any error committed in the ALJ's evaluation of Plaintiff's oxygen use and smoking would be harmless. However, because SSR 16-3p requires the ALJ to consider the consistency of plaintiff's statements with the record, not her overall credibility, the undersigned need not reach the question of whether the ALJ erred in his evaluation of Plaintiff's consistency with respect to the limiting effects of her COPD.

In summary, the undersigned finds that the ALJ properly evaluated the consistency of Plaintiff's statements regarding her symptoms and limitations under SSR 16-3p, finding them to be inconsistent with the record overall. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VII. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE